SCHUBERT v. DEARBORN CIVIL SERVICE BOARD.

1. MUNICIPAL CORPORATIONS—CIVIL SERVICE BOARD—CHARTERS.
    Under Dearborn city charter, the municipal civil service board has authority to conduct a hearing for purpose of investigating dismissal of city employee, to determine whether or not the dismissal was for reasons other than the good of the service, to suspend him for a time and reinstate him at the expiration thereof (Dearborn charter [1942], §§ 9.6, 9.10).

2. CERTIORARI—QUESTIONS REVIEWABLE—EVIDENCE.
    On certiorari the court may not review questions of fact, may not determine disputed facts nor weigh the evidence except to de-

termine whether it will justify the finding as a legitimate inference from the facts proved whether that inference would or would not have been drawn by the appellate tribunal.

3. MUNICIPAL CORPORATIONS—FINDINGS OF CIVIL SERVICE BOARD—EVIDENCE—DIRECTOR OF BOYS' ACTIVITIES—FINDING.

On appeal from order of circuit court dismissing .petition by city officer for certiorari to review action of municipal civil service board in reinstating an employee of department of health and recreation, record *held*, to contain competent and substantial evidence supporting finding of civil service board that the employee was discharged for reasons other than the good of the service, it appearing there was confusion as to who was to exercise control over his activities as director of boys' activities in arrangement city had with a school board and a nonprofit corporation for the benefit of boys of the city (Dearborn charter [1942], §§ 9.6, 9.10).

4. COSTS—PUBLIC QUESTION—MUNICIPAL CORPORATIONS—CIVIL SERVICE BOARD.

No costs are allowed on appeal from order dismissing petition by city officer for certiorari to review action of municipal civil service board in reinstating a municipal employee, a public question being involved.

Appeal from Wayne; Callender (Sherman D.), J. Submitted April 4, 1945. (Docket No. 37, Calendar No. 42,938.) Decided June 4, 1945.

Certiorari by Henry D. Schubert to review action of James A. Forrester and others, as members of Civil Service Board for the city of Dearborn, in reinstating Willis M. Lutz as city employee. Order affirming action of Board. Plaintiff appeals. Affirmed.

*Dale H. Fillmore,* Corporation Counsel of Dearborn, for plaintiff.

*John J. Fish,* for defendants.

STARR, C. J. Plaintiff appeals from a circuit court order dismissing his petition for certiorari to

review the action of the civil service board of the city of Dearborn in reinstating one Willis M. Lutz as an employee of the department of health and recreation.

The material facts are not in dispute. For several years prior to January 5, 1943, plaintiff Schubert was employed by the city of Dearborn as superintendent of its department of recreation. Under the city charter adopted in 1929, the department of recreation was controlled by a recreation commission, and section 88 of the charter provided as follows:

"Subject to approval by the council, the commission shall have power to arrange or contract with the board or boards of education in the city for the joint operation of any playgrounds or other recreational facilities or for the use and operation of any grounds, facilities or equipment belonging to such board or boards which it or they may desire to be used and operated by the commission, *upon such conditions and terms of payment or contribution to cost, as may be mutually agreed by the commission and board.*"

The Fordson school district is located in the city of Dearborn. About 1937 a nonprofit corporation known as the Dearborn Boys' Club was organized, its object, as stated in its constitution, being "to promote the physical, mental and moral well-being of the boys of Dearborn by providing such means of education and amusement as in the judgment of the directors may seem most likely to achieve the desired ends." About 1937 the city, acting under the above charter provision, entered into a working arrangement with the school district and the boys' club, whereby the buildings and equipment of the district were to be used by the club and the city in providing educational and recreational facilities for boys. This arrangement has been continued

from year to year, but apparently no formal written agreement has ever been executed between the city, the school district, and the club. Under this co-operative arrangement the city paid the salaries of certain of its employees who worked with the boys' club, including the salary of said Willis Lutz. It appears that Lutz was a civil service employee, classified as director of boys' activities, and that he acted as director of the work of the boys' club. The club combined its personnel and the school facilities and the personnel furnished and paid by the city in a program of education, recreation, and character training for boys. The city participated in this program only by the payment of the salaries of Lutz and other employees, as above mentioned.

In 1942 the city of Dearborn adopted a new charter, which became effective January 5, 1943. Under the new charter the former department of recreation became a division of the department of health and recreation. Section 8.24 of the 1942 charter provides in part:

"Within the department of health and recreation there shall be a division of recreation which shall be under the general management and control of a superintendent, to be known as the superintendent of recreation. * * * *Subject to the civil service provisions of this charter, and within the annual budget provisions for each fiscal year of the city, he (superintendent of recreation) shall employ necessary assistants and other employees required to properly manage and conduct the activities of the department, and shall formulate rules and regulations for the control and management of the division of recreation and its activities and employees, provided that such rules and regulations shall, before going into effect, be approved by the mayor. * * *

"Subject to approval by the council and the health officer, the division shall have power to arrange or contract with the board or boards of education in the city for the joint operation of any playgrounds or other recreational facilities or for the use and operation of any grounds, facilities, or equipment belonging to such board or boards which it or they may desire to be used and operated by the division, upon such conditions and terms of payment or contribution to cost, as may be mutually agreed by the division and board or boards."

Plaintiff Schubert was continued as superintendent of recreation under the new charter. It appears that there was continual conflict between plaintiff and the board of directors of the boys' club, each of whom sought to exercise complete control and authority over Lutz and his work. An opinion of the city attorney (who is plaintiff's attorney in the present suit) was requested, and he advised in part:

"The department of recreation under the direction of Mr. Schubert (plaintiff) does not have entire and absolute control over the work which Mr. Lutz and his staff are carrying on among the boys due to the fact that the responsibility and control is being shared with the boards of education of the city and a third party known as the 'Boys' Club of Dearborn.'"

In the summer of 1943 Lutz, at the direction of the board of directors of the boys' club, had taken a group of boys from the club to Traverse City to assist in harvesting the cherry crop. In the spring of 1944 plaintiff instructed Lutz *not* to take the boys on the annual cherry-picking trip. On June 5th the board of directors of the boys' club authorized him to make the trip. The trip was also authorized by the executive committee of the board at its meeting

on July 7th, at which plaintiff was present. The following record of the executive committee meeting explains the situation:

"Mr. St. Charles explained that the purpose of the executive committee meeting was to discuss personnel problems pertaining to Mr. Lutz' assignment during the summer. The matter of allowing Mr. Lutz to take a group of boys' club members to Traverse City for the purpose of picking cherries was a problem of immediate concern. An animated discussion followed. Mr. Schubert (plaintiff) stated he refused to approve of Mr. Lutz going on the cherry-picking expedition for the reason that it interfered with the previously planned summer city recreational program. The entire matter appeared to boil down to a question of authority for making assignments. That is, whether Mr. Schubert was responsible for assigning Mr. Lutz, or whether the board of directors of the Dearborn Boys' Club had this authority. The problem was not settled. A vote was taken of the members of the executive committee present as to whether Mr. Lutz should go on the cherry-picking trip. The result of this vote was all in favor of Mr. Lutz going, except Mr. Schubert."

About July 16th, in pursuance of the instruction of the board of the boys' club, and contrary to plaintiff's instruction, Lutz took a group of boys to Traverse City. On July 31st, after Lutz' return, plaintiff gave him written notice of discharge, effective August 1st, stating that the reason for his discharge was "absence without leave." Lutz immediately requested a hearing before the civil service board of the city. A hearing was held, testimony was taken, and the civil service board's report of its finding states in part:

"Mr. Lutz has been an employee on the city payroll since July, 1937. It was admitted by everybody

who gave testimony that his work has always been satisfactory; that his accomplishments have been most remarkable under adverse circumstances particularly with reference to the locations in which he rendered these services.

"Under and by virtue of an oral agreement entered into in 1936 at the time of the formation of the Dearborn Boys' Club and renewed each succeeding year during the preparation of budgets, Mr. Lutz always looked to the governing board of the boys' club for direction and supervision, and after the adoption of the new charter he continued to get his directions from the boys' club.    *    *    *

"We are of the opinion, however, and we so find that Mr. Lutz being an employee of the city and being paid from the city funds is under the supervision of Mr. Schubert as superintendent of recreation in the department of health.    However, we believe that factors contributing to the confusion of the issues in this matter as to line of authority, direct and indirect supervision, et cetera, has led to uncertainties and doubt in the mind of the employees of the boys' club and for that reason *we find that Willis Lutz' dismissal was not for the good of the service* as described in the charter.

"Mr. Schubert's testimony indicated that Mr. Lutz' work was very satisfactory and we conclude that his disobedience in leaving without permission which is the charge upon which his dismissal was based was not culpable and was not wilful disobedience but was done due to the confusion and the mixup in line of authority. *Therefore, it is the finding of this board that Mr. Lutz be suspended without pay for the period of time for which he was off duty from the playgrounds namely July 17, 1944, through July 31, 1944, inclusive, and that he be reinstated to his position and returned to the payroll as of August 1, 1944.*"

On review by certiorari the circuit judge affirmed the finding of the civil service board and dismissed

plaintiff's petition. In his opinion the court said: "There was sufficient proof upon which the commission (civil service board) could find, as the result of said investigation, that Mr. Lutz' dismissal * * * was for reasons other than the good of the service." Having obtained leave, plaintiff appeals.

Relative to the authority of the civil service board, the 1942 Dearborn city charter provides in part:

"SEC. 9.6. It shall be the duty of the civil service board: * * *

"(4) To sit as a body in investigating and hearing appeals of any officer or employee. * * *

"(5) * * * (e) The establishment of policies and practices governing the separation of employees from the city service—including rejecting employees during the working test period, laying off employees due to lack of work or funds, establishing uniform practices with regard to resignations, deaths, retirements, suspensions for disciplinary purposes, and dismissals for cause. * * *

"SEC. 9.10. * * * An appointing authority may dismiss or demote a classified employee whenever he considers the good of the service to be served thereby. * * * The board may investigate such dismissal or demotion, and upon the written request of the dismissed or demoted employee, made within ten days after the effective date of such dismissal or demotion, shall grant to such employee a fair and impartial hearing. *If it shall find as a result of such investigation that the dismissal or demotion was made * * * for reasons other than the good of the service,* it shall so report to the appointing authority, and the person so dismissed or demoted shall thereupon be entitled to resume his position. * * * *The decision of the board shall be final and binding as to all questions of fact.*"

Under the above charter provisions the civil service board had authority to conduct a hearing for the purpose of investigating the dismissal of Lutz and determining whether or not his dismissal was for reasons other than the good of the service. Having determined that his dismissal "was not for the good of the service," the board had authority to suspend him from July 17th to July 31st and to reinstate him in his position as of August 1st.

The only question requiring determination on this appeal is whether or not there was competent and substantial testimony supporting the finding of the civil service board. In the case of *Carroll* v. *City Commission of City of Grand Rapids*, 266 Mich. 123, we said:

"On certiorari this court may not review questions of fact. *Brown* v. *Blanchard,* 39 Mich. 790. It is not at liberty to determine disputed facts (*Hyde* v. *Nelson,* 11 Mich. 353), nor to review the weight of the evidence. *Linn* v. *Roberts,* 15 Mich. 443; *Lynch* v. *People,* 16 Mich. 472.    *    *    *

" 'The office of a certiorari is not however to review questions of fact, but questions of law. And in examining into the evidence the appellate court does so not to determine whether the probabilities preponderate one way or the other but simply to determine whether the evidence is such that it will justify the finding as a legitimate inference from the facts proved, whether that inference would or would not have been drawn by the appellate tribunal.' *Jackson* v. *People,* 9 Mich. 111 (77 Am. Dec. 491)."

In the case of *Public Welfare Commission of Detroit* v. *Civil Service Commission of Detroit,* 289 Mich. 101, 107, 108, we said:

"If the civil service system as set up by the people of Detroit is to be effective, there should be finality

to the findings made by the commission and review by courts should be limited to the narrow confines of the office of the writ of certiorari.  *  *  *

"We are only concerned, however, with the determination of whether or not there was substantial evidence to support the finding of the commission."

In the present case it appears that plaintiff was strongly opposed to the working arrangement between the city, the school district, and the boys' club and that he was overzealous in his efforts to exercise complete control and authority over Lutz and other city employees who were connected with the work of the club. Lutz' work had been entirely satisfactory, and it reasonably appears that he was caught as an innocent victim in this clash between plaintiff and the board of directors of the club. It is unnecessary to discuss in detail the testimony adduced before the civil service board relative to the dispute between plaintiff and the management of the boys' club. Suffice it to say that in the present case there was competent and substantial evidence supporting the finding of the civil service board that Lutz was discharged for reasons other than the good of the service.

Plaintiff raises the question as to the legality of the appropriation of public money by the city of Dearborn to pay the salaries of Lutz and other city employees connected with the work of the boys' club. That question is not before us in the present case. Other questions presented do not require consideration.

The order of the trial court dismissing plaintiff's petition for certiorari is affirmed. A public question being involved, no costs are allowed.

NORTH, WIEST, BUTZEL, BUSHNELL, SHARPE, BOYLES, and REID, JJ., concurred.