White; J.
 

 Defendant was charged with assault with intent to commit murder, MCL 750.83; MSA 28.278, and assault with intent to commit sexual penetration, MCL 750.520g(l); MSA 28.788(7)(1), after attacking a female aide at the Center for Forensic Psychiatry, Department of Corrections, where defendant was hospitalized. A jury found defendant guilty of assault with intent to murder and acquitted him of the other assault charge. Defendant was sentenced to twenty-five to fifty years’ imprisonment as an habitual offender, second offense, MCL 769.10; MSA 28.1082.
 

 Defendant appeals as of right, challenging as ex post facto the application of the amended legal insanity-statute to the charged offenses, which were committed before the change in law, and asserting claims of insufficiency of the evidence, improper admission of inculpatory testimony as rebuttal evidence, ineffective assistance of counsel, instructional
 
 *171
 
 error regarding diminished capacity and intoxication, and that his sentence is disproportionate. We conclude that the retroactive application of the amended insanity statute was ex post facto, and we therefore reverse. Because we reject defendant’s sufficiency claims, we remand for a new trial.
 

 i
 

 We first address defendant’s claim that application of the 1994 amendment of the insanity statute to offenses committed before the amendment took effect violates the Ex Post Facto Clauses of the federal and state constitutions, US Const, art I, § 9, cl 3; Const 1963, art 1, § 10. Defendant argues that his rights under the clauses were violated because he was tried under, and the jury was instructed in accordance with, the amended insanity statute, which eliminated the prosecution’s burden of proving sanity beyond a reasonable doubt and placed on defendant the burden of proving he was insane by a preponderance of the evidence, thus permitting the prosecution to convict on less evidence. We agree.
 

 Constitutional issues are issues of law we review de novo.
 
 People v Echavarria,
 
 233 Mich App 356, 358; 592 NW2d 737 (1999). Defendant did not object to the jury instruction. We review unpreserved claims of constitutional error for plain error.
 
 People v Carines,
 
 460 Mich 750, 764; 597 NW2d 130 (1999). “To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights.”
 
 Id.
 
 at 763. Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually inno
 
 *172
 
 cent defendant or when the error seriously affected the fairness, integrity, or public reputation of judicial proceedings independent of the defendant’s innocence.
 
 Id.
 
 at 763-764. We consider this claim of plain constitutional error because we conclude that it affected substantial rights and the outcome of the proceedings.
 
 Id.
 

 A
 

 The charged conduct in this case occurred on May 3, 1993. At that time, the insanity statute made no reference to the burden of proof. The burden of proof in criminal cases in which defendants asserted the insanity defense was governed by common law:
 

 [Ojnce the issue [of insanity] is raised and evidence of insanity is presented by the defendant, the prosecutor then must go forward and produce evidence beyond a reasonable doubt that the defendant was sane at the time the crime was committed. The same burden of proof which the prosecutor must carry in proving the elements of a crime is applicable in establishing the defendant’s sanity. However, this burden of going forward and establishing defendant’s sanity beyond a reasonable doubt only arises following the defendant’s introduction of evidence of insanity (i.e., affirmative defense), which is not true of the stated elements of an offense.
 
 [In re Certified Question,
 
 425 Mich 457, 465-466; 390 NW2d 620 (1986).]
 

 Further,
 

 [t]he amount of evidence that is sufficient to overcome the presumption of sanity is minimal.... The current Michigan standard is stated in
 
 People v Krugman, 311
 
 Mich 559, 563; 141 NW2d 33 (1966): “A criminal defendant is presumptively sane.. However, once there is any evidence introduced of insanity, the burden of proof is on the prosecution to estab
 
 *173
 
 lish defendant’s sanity beyond a reasonable doubt.”
 
 [People v Savoie,
 
 419 Mich 118, 126; 349 NW2d 139 (1984).]
 

 The 1994 amendment of the insanity statute, 1994 PA 56, MCL 768.21a; MSA 28.1044(1), took effect on October 1, 1994, adding to the statute that “legal insanity” is an affirmative defense and that a defendant has the burden of proving the defense by a preponderance of the evidence. We quote the amended statute below, with the amendment’s provisions emphasized:
 

 (1)
 
 It is an affirmative defense to a prosecution for a criminal offense that the defendant was legally insane when he or she committed the acts constituting the offense. An individual
 
 is legally insane if, as a result of mental illness as defined in . . . [MCL 330.1400a; MSA 14.800(400a)] . . . that person lacks substantial capacity either to appreciate the
 
 nature and quality or the
 
 wrongfulness of his
 
 or her
 
 conduct or to conform his
 
 or her
 
 conduct to the requirements of
 
 the
 
 law.
 
 Mental illness or being mentally retarded does not otherwise constitute a defense of legal insanity.
 

 (3)
 
 The defendant has the burden of proving the defense of insanity by a preponderance of the evidence.
 
 [MCL 768.21a; MSA 28.1044(1).]
 

 The trial cotxrt in the instant case read almost verbatim the jury instruction that had been modified in 1994 to reflect the amended statute.
 
 [1]
 

 
 *174
 
 B
 

 The prosecution argues that the amendment of the insanity statute was procedural, not substantive, because it did not create new rights or destroy existing rights.
 
 People v Russo,
 
 439 Mich 584, 592-593; 487 NW2d 698 (1992). It argues that defendant’s rights were not violated because he still had the right to assert the insanity defense and the burden of proof is simply part of the procedural framework for asserting the defense.
 

 
 *175
 
 The Ex Post Facto Clause was intended to secure substantial personal rights against arbitrary and oppressive legislation, and not to limit legislative control of remedies and procedures that do not affect matters of substance.
 
 Id.
 
 at 592. A statute that affects the prosecution or disposition of criminal cases involving crimes committed before its effective date violates the Ex Post Facto Clauses if it “(1) makes punishable that which was not, (2) makes an act a more serious criminal offense, (3) increases the punishment, or (4)
 
 allows the prosecution to convict on less
 
 evidence.”
 
 Riley v Parole Bd,
 
 216 Mich App 242, 244; 548 NW2d 686 (1996) (emphasis added).
 

 While there is no Michigan law directly on point, other state and federal courts have addressed whether similar changes to insanity statutes are substantive and thus subject to the Ex Post Facto Clause. The courts have uniformly concluded that changes affecting the burden of proof are substantive and that retroactive application of the changes would violate the Ex Post Facto Clause.
 

 In
 
 Illinois v Hickman,
 
 143 Ill App 3d 195, 198; 97 Ill Dec 392; 492 NE2d 1041 (1986), the court rejected the prosecution’s argument that the defendant had to prove his insanity by a preponderance of the evidence on the ground that “[a] shift in the burden of proof relating to the insanity defense would be an ex post facto application of the statute if applied to the trial for an offense which was committed prior to the amendment to the law, such as in the instant case.” Before the amendment, when a defendant introduced evidence of insanity, the prosecution was required
 
 *176
 
 under a common-law standard
 
 [2]
 
 to prove his sanity beyond a reasonable doubt. The amendment placed the burden of proof on a defendant to prove his insanity by a preponderance of the evidence.
 

 In
 
 Lewis v State,
 
 709 P2d 1278, 1282-1283 (Wy, 1985), the Wyoming Supreme Court held that the defendant was prejudiced by the trial court’s giving a jury instruction on insanity that reflected an amended insanity statute, which, as applied to the defendant, was ex post facto. In addressing the question whether the prosecution had a lesser burden of proof under the instruction than it would have had if the instruction under the original statute had been given, the court noted:
 
 [3]
 

 
 *177
 
 Since the original act required the prosecution to “prove beyond a reasonable doubt. . . the mental responsibility of the defendant,” and the amended statute required the defendant to prove the same “by the greater weight of the evidence,” it is obvious that the appellant could have been prejudiced. The jury here found that he had not established it to be more likely than not that he could not conform his conduct to the requirements of law—as required by the instruction. Under an instruction pursuant to the old law, the jury would have had to find that his ability to conform his conduct to the requirements of law had to be proven beyond a reasonable doubt. The burden was shifted and the State was relieved of the obligation to establish the status “beyond a reasonable doubt.”
 

 Appellant was prejudiced by failing to give the instruction under the statute in effect at the time of the incident.
 
 [Id.]
 

 In
 
 United States v Williams,
 
 154 US App DC 244; 475 F2d 355 (1973), the court concluded that a jury instruction adapted to a District of Columbia statute not in effect at the time of the charged offenses, which placed on the defendant the burden of establishing his insanity defense by a preponderance of the evidence, was ex post facto where the former statute
 
 *178
 
 provided that the prosecution had the burden of proving criminal responsibility beyond a reasonable doubt once the defendant raised an insanity defense.
 
 [4]
 

 Several federal courts have noted that retrospective application of the provisions of the Insanity Defense Reform Act of 1984, 18 USC 17, that narrowed the definition of the insanity defense
 
 [5]
 
 and provided for
 
 *179
 
 the first time that the defendant has the burden of proving insanity by clear and convincing evidence would violate the Ex Post Facto Clause. See
 
 United States v Samuels,
 
 801 F2d 1052, 1054, n 1 (CA 8, 1986);
 
 United States v Prickett,
 
 604 F Supp 407, 410 (SD OH, 1985);
 
 [6]
 

 United States v Kowal,
 
 596 F Supp 375, 379 (D Conn, 1984) (noting that “[p]rior to the Act, evidence short of proof of sanity beyond a reasonable doubt would entitle defendant to an acquittal. The Act, by allocating the burden of proof to defendant, results in an acquittal by reason of insanity only if insanity is proven clearly and convincingly”). See also
 
 United States v Teller,
 
 762 F2d 569, 576, n 4 (CA 7, 1985), which, although not factually on point, states: “The Department of Justice accepts the view
 
 *180
 
 that these changes [to the federal insanity defense by the Insanity Defense Reform Act] do not apply to conduct antedating the enactment of the statute,” citing United States Dep’t of Justice, Handbook on the Comprehensive Crime Control Act of 1984 and Other Criminal Statutes Enacted by the 98th Congress 58, 65 (1984).
 

 c
 

 In the instant case, before the 1994 amendment of the insanity statute, if a defendant proffered even minimal evidence of insanity, the prosecution was required to prove beyond a reasonable doubt that the defendant was sane. Guided by the authority already discussed, we conclude that the amendment was substantive and not procedural, because the prosecutor’s burden is lessened and the defendant’s burden is increased such that he must prove by a preponderance of the evidence that he was insane at the time of the crime. The amended statute affected the prosecution or disposition of this case because the jury was instructed in accordance with the amended statute. Thus, because the amendment’s change in the burden of proof affected the defendant’s substantive rights, allowing the prosecution to convict on less evidence, retroactive application of the statute violated the Ex Post Facto Clause. We reverse and remand for a new trial.
 

 n
 

 Defendant next argues that the prosecution presented insufficient evidence of specific intent to kill to convict of assault with intent to commit mur
 
 *181
 
 der. He further argues that he satisfied his burden of proving legal insanity by a preponderance of the evidence by demonstrating that he was mentally ill with paranoid schizophrenia or that he suffered diminished capacity due to drug-induced involuntary intoxication.
 

 To determine whether sufficient evidence was presented, we view the evidence in a light most favorable to the prosecution and determine whether a rational trier of fact could have found that the essential elements of the crime were proved beyond a reasonable doubt.
 
 People v
 
 McMillan, 213 Mich App 134, 139; 539 NW2d 553 (1995). The elements of assault with intent to commit murder are (1) an assault, (2) with an actual intent to kill, (3) which, if successful, would make the killing murder.
 
 People v Davis,
 
 216 Mich App 47, 53; 549 NW2d 1 (1996). Circumstantial evidence and the reasonable inferences that arise from the evidence can constitute satisfactory proof of the elements of the crime.
 
 People v Truong (After Remand),
 
 218 Mich App 325, 337; 553 NW2d 692 (1996). The intent to kill may be proved by inference from any facts in evidence.
 
 Id.
 
 Because of the difficulty of proving an actor’s state of mind, minimal circumstantial evidence is sufficient.
 
 People v Bowers,
 
 136 Mich App 284, 297; 356 NW2d 618 (1984). All conflicts in the evidence must be resolved in favor of the prosecution.
 
 People v Terry,
 
 224 Mich App 447, 452; 569 NW2d 641 (1997). This Court wifi not interfere with the jury’s role of determining the weight of evidence or the credibility of witnesses.
 
 People v Wolfe,
 
 440 Mich 508, 514; 489 NW2d 748 (1992), amended 441 Mich 1201 (1992);
 
 Terry, supra
 
 at 452.
 

 There was evidence that defendant not only choked the victim with his arm around her throat, but also
 
 *182
 
 put his other hand over her mouth and kept both in place while he and the victim struggled and fell to the floor. There was evidence that the victim was unable to breathe and blacked out just before she was rescued by a co-worker. The testimony regarding bruises on the victim’s neck and facial injuries support an inference that defendant intended to choke or strangle her. Further, there was evidence that defendant told several people he intended to kill her or choke her to unconsciousness.
 

 We conclude that viewing the evidence in a light most favorable to the prosecution, a rational trier of fact could have found that the essential element of intent was proved beyond a reasonable doubt.
 

 Although defendant presented an expert witness who testified that he was legally insane at the time of the incident, the prosecution presented two expert witnesses who testified that he was not. There was testimony that defendant exhibited signs of mental illness but knew that what he was doing was wrong and could conform his conduct to the requirements of the law. There was sufficient evidence to support the finding that defendant was not legally insane or that he was a malingerer. Viewing the evidence in a light most favorable to the prosecution, a rational trier of fact could have found that defendant was not legally insane at the time of the incident.
 

 m
 

 Defendant next argues that the trial court erred in permitting the prosecution to introduce testimony on rebuttal of inculpatory statements he made to forensic center staff, statements that the trial court had previously ruled were privileged and inadmissible in
 
 *183
 
 the prosecutor’s case in chief. Defendant also argues that the court’s admission of other-acts evidence in rebuttal was an abuse of discretion and that the prosecution did not give proper notice under MRE 404(b)(2) of intent to introduce other-acts evidence.
 

 The decision whether to admit or exclude evidence is within the trial court’s discretion.
 
 McMillan, supra
 
 at 137. Under
 
 People v Woody,
 
 380 Mich 332, 338; 157 NW2d 201 (1968), and its progeny, evidence of a defendant’s past conduct, arrests, convictions, and assaultive and antisocial conduct, normally inadmissible as bearing on the defendant’s general guilt or innocence of the offense charged, becomes material and admissible as bearing on the issue of his sanity. The prosecution is entitled to cross-examine defense witnesses and introduce rebuttal testimony.
 
 Id.
 
 at 338;
 
 People v Lipps,
 
 167 Mich App 99, 107-109; 421 NW2d 586 (1988);
 
 People v Cramer,
 
 97 Mich App 148, 161; 293 NW2d 744 (1980);
 
 People v Simonds,
 
 135 Mich App 214, 218-219; 353 NW2d 483 (1984).
 

 Under
 
 Woody, supra,
 
 the admission on rebuttal of the forensic center staff’s testimony and other-acts evidence was permitted. Defendant’s argument that the prosecution failed to give proper notice of use of other-acts evidence under MRE 404(b) is without merit, because that rule’s analysis does not apply when other-acts evidence is introduced on the issue of the defendant’s sanity.
 
 Simonds, supra
 
 at 218 (noting that the concerns that underlie MRE 404[b] are not implicated where the challenged evidence is introduced on the issue of the defendant’s sanity, and not in an attempt to have the jury convict of the crime charged on the basis of past misconduct).
 

 
 *184
 
 Defendant also argues that the trial court erred in permitting a police officer to testify on rebuttal regarding admissions defendant made to him, without having been given warnings required under
 
 Miranda v Arizona,
 
 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966). On rebuttal, the police officer testified that he interviewed defendant on the day of the incident and that defendant described how he attacked the victim from behind, choked her until a staff member arrived to help her, and said he was surprised she had not died. Defendant told the officer that he had intended to kill the victim. On cross-examination, defense counsel asked the officer whether he asked defendant why he wanted to kill the victim. The officer responded that he had and that defendant said that the victim was a member of the death squad and that he had been hearing voices that told him that and instructed him to kill her to make sure she did not kill him first.
 

 Statements of an accused made during custodial interrogation are inadmissible unless the accused has voluntarily, knowingly, and intelligently waived his Fifth Amendment rights.
 
 People v Howard,
 
 226 Mich App 528, 538; 575 NW2d 16 (1997), citing
 
 Miranda, supra
 
 at 444. The general rule that a constitutional error does not automatically require reversal of a conviction was adopted in
 
 Chapman v California,
 
 386 US 18; 87 S Ct 824; 17 L Ed 2d 705 (1967).
 
 Arizona v Fulminante,
 
 499 US 279, 306; 111 S Ct 1246; 113 L Ed 2d 302 (1991). The
 
 Fulminante
 
 Court held that the admission of an
 
 involuntary
 
 statement or confession is a trial error subject to harmless-error analysis.
 
 Id.
 
 at 310;
 
 Howard, supra
 
 at 542. Defendant’s statement,
 
 *185
 
 which he does not argue was involuntary, is thus subject to harmless-error analysis.
 

 Before the police officer testified on rebuttal regarding the contents of defendant’s statement to him, the prosecution cross-examined defendant’s expert regarding the police report. The police report contained the same information defendant challenges as admitted in violation of
 
 Miranda.
 
 The police report stated that forensic center staff told the police that defendant had said he had heard voices and tried to kill the victim by choking her to death. Experts for both sides testified that they had reviewed the police report and considered it in arriving at their opinions. We conclude that the officer’s testimony was cumulative and that its admission was harmless error.
 

 In light of our disposition, we need not address defendant’s claims of ineffective assistance of counsel, his challenges to various jury instructions and to his sentence, and his argument that the cumulative effect of errors denied him a fair trial.
 

 Reversed and remanded for a new trial. We do not retain jurisdiction.
 

 [1]
 

 The jury was instructed:
 

 (1) The defense of legal insanity has been raised in this case. That is an affirmative defense that
 
 the defendant has the burden of proving by a preponderance of the evidence.
 
 That means the defendant must satisfy you by evidence that outweighs the evi
 
 *174
 
 dence against it that he was legally insane when he committed the acts constituting the offense. The law excuses a person who is legally insane [at the time of the crime] but it is very important for you to remember that mental illness and legal insanity are not the same. A person can be mentally ill and still not be legally insane.
 

 (6) To be legally insane, a person must first be . .. mentally ill as I have defined those conditions. That is not enough. To be legally insane, the person must because of his mental illness lack substantial capacity either to appreciate the nature and quality or the wrongfulness of his conduct or to conform his conduct to the requirements of the law.
 

 (7) To decide whether the defendant was legally insane at the time of the crime, you should go through the following two steps:
 

 (8) Step one, are you satisfied that the defendant has established by evidence that outweighs the evidence against it, that he was mentally ill at the time of the crime. Unless you were so satisfied, he was not legally insane. On the other hand, if the defendant has proved that he was mentally ill you must go on to the next step.
 

 (9) Step two, are you also satisfied that the defendant has established by evidence that outweighs the evidence against it that he lacked the substantial ability either to appreciate the nature and quality or the wrongfulness of his conduct or to conform his conduct to the requirements of the law he is charged with violating.
 

 (10) If the defendant has proven both step one and step two, you must find him not guilty by reason of insanity. However, if he has failed to prove either or both steps, his claim of legal insanity fails. [CJI2d 7.11] ■
 

 [2]
 

 The
 
 Hickman
 
 court cited
 
 People v Hollins,
 
 136 Ill App 3d 1, 4; 90 Ill Dec 770; 482 NE2d 1053 (1985), superseded by statute as recognized in
 
 Hickman, supra,
 
 in which the
 
 Hollins
 
 court stated the then governing standard: “WhHe aU men are presumed sane, once a defendant introduces evidence of insanity, the State must prove his sanity beyond a reasonable doubt.” In a footnote, the
 
 Hollins
 
 court stated:
 

 This rule was changed by statute to place the burden of proof by a preponderance of the evidence upon the defendant (PA 83-288, § 1, effective January 1, 1984.) WhHe the present case went to trial after January 1, 1984, it is governed by prior law because a shift in the burden of proof relating to the insanity defense would be an ex post facto law if applied to an offense committed prior to the change in law. [136 Ill App 3d 5, n 1, citing
 
 United States v Williams,
 
 154 US App DC 244; 475 F2d 355 (1973), discussed
 
 infra.]
 

 [3]
 

 The preamendment statutes in
 
 Lewis
 
 provided in pertinent part:
 

 A person is not responsible for criminal conduct if at the time of the criminal conduct, as a result of mental illness or deficiency, he lacked substantial capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of the law.
 

 The prosecution shall prove beyond a reasonable doubt
 
 aU elements of the offense charged and
 
 the mental responsibility of the defendant.
 
 However, every defendant is presumed to be mentaHy responsible and the burden of first going forward and entering evi
 
 *177
 
 dence on the issue of mental responsibility is upon the defendant.
 
 [Id.
 
 at 1280 (emphasis added).]
 

 The amended statutes provided in pertinent part:
 

 The prosecution shall prove beyond a reasonable doubt all the elements of the offense charged. Every defendant is presumed to be mentally responsible.
 
 The defendant shall have the burden of
 
 going forward and
 
 proving by the greater weight of evidence
 
 that, as a result of mental illness or deficiency,
 
 he lacked capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of the law. [Id.
 
 (emphasis added).]
 

 The jury instruction in
 
 Lewis
 
 was given under the amended statute.
 

 [4]
 

 Williams, supra,
 
 involved an amendment of the District of Columbia Code that added the following provision:
 

 No person accused of an offense shall be acquitted on the ground that he was insane at the time of its commission unless his insanity, regardless of who raises the issue, is affirmatively established by a preponderance of the evidence.
 
 [Id.
 
 at 356.]
 

 Before the amendment, once a criminal defendant raised the insanity defense, the prosecution had the burden of proving criminal responsibility beyond a reasonable doubt.
 
 Id.
 
 Judge Slrelly Wright, writing for the court, said:
 

 The retroactive application given Section 207(6) by the trial court “alter[ed] the
 
 legal
 
 rules of
 
 evidence"
 
 so that appellant was convicted on “less, or different, testimony, than the law required at the time of the commission of the offence.”
 
 [Id.
 
 at 356-357 (emphasis in original).]
 

 [5]
 

 The Comprehensive Crime Control Act of 1984, of which the Defense Reform Act (Act) is a part, provides in § 402:
 

 (a) Affirmative defense.—It is an affirmative defense to a prosecution under any Federal statute that, at the time of the commission of the acts constituting the offense, the defendant, as a result of severe mental disease or defect, was unable to appreciate the nature and quality or the wrongfutness of his acts. Mental disease or defect does not otherwise constitute a defense.
 

 (b) Burden of proof.—The defendant has the burden of proving the defense of insanity by clear and convincing evidence. [18 USC 17.]
 

 Before the enactment of the Act, the American Law Institute (ali) standard, which was incorporated into the Model Penal Code, was used for several decades in nearly all federal courts, see
 
 United States v Kowal,
 
 596 F Supp 375, 378 (D Conn, 1984), and provided:
 

 A person is not responsible for criminal conduct if at the time of such conduct as a result of mental disease or defect he lacks sub
 
 *179
 
 stantial capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of the law.
 

 The
 
 Kowal
 
 court noted:
 

 Under the ali standard, a finding that defendant met either the cognitive or volitional test would result in acquittal.... [while] the [Insanity Defense Reform Act] sanctions only a unitary, cognitive standard.
 

 .... The change effectuated by the Act is . . . substantive. Retrospective application of the Act’s standard to this defendant would deprive him of one prong of the ali insanity defense to wit, that at the time of his conduct, as a result of mental disease or defect, he lacked substantial capacity to conform his conduct to the requirements of the law. As the Act, if applied, would deprive one charged with crime of a defense available at the time when the act was committed, it cannot be so applied in the face of the
 
 ex post facto
 
 clause.
 
 [Id.]
 

 [6]
 

 Prickett
 
 held that the newly amended rule of evidence limiting the scope of expert testimony regarding a defendant’s mental state or condition was a procedural change and its application to offenses committed before the amendment would not violate the Ex Post Facto Clause, but noted that the parties agreed that “the ex post facto clause does prevent the statutory insanity defense of 18 USC § 20 to control Defendant’s invocation of the insanity defense herein.”