*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
March 26, 2019

Plaintiff-Appellee,

v

No. 340028
Wayne Circuit Court
LC No. 16-007780-01-FC

DEXTER BURRELL TAYLOR,

Defendant-Appellant.

Before: SHAPIRO, P.J., and BECKERING and M. J. KELLY, JJ.

PER CURIAM.

Defendant, Dexter Taylor, appeals as of right his jury conviction of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1)(e) and (f). Taylor was sentenced pursuant to the judicial sentencing guidelines to 37 to 80 years in prison. Because there are no errors warranting reversal, we affirm.

## I. BASIC FACTS

In July 1996, Rachel Davis reported that she was sexually assaulted behind a vacant building on Outer Drive in Melvindale in July 1996. Davis accepted a ride from Taylor, believing that they would smoke crack cocaine together. She did not know Taylor, but had previously seen him at locations where crack cocaine users gathered. According to Davis, Taylor drove behind the vacant building and parked in a loading dock area. He ordered her out of the car, and she got scared and jumped out, losing her sandals in the process. After she got out of his car, Taylor pushed her to the pavement and penetrated her vagina with his penis. He then hit her a few times with a baseball bat before eventually leaving in his vehicle. Davis made her way to the front of the store where she yelled for help from passing cars. She was eventually taken to a hospital where she received a rape-kit examination.

In 2016, the Wayne County Prosecutor's Office Sexual Assault Kit Task Force received information that Taylor's DNA profile matched the DNA profile collected from Davis's rape kit, and also from a rape kit for another person, Erica Doak, who was sexually assaulted in Detroit in 1994. Taylor was charged with CSC-I for the offense against Davis, but was not charged with any offense against Doak because the limitations period for the 1994 assault against Doak had

expired.[1]  Taylor was first tried in December 2016.  The jury deadlocked, however, and a mistrial was declared.

Before Taylor was retried, the prosecution moved to admit testimony from Doak under MRE 404(b)(1).  The trial court granted the motion.  At trial, Doak testified that she was sexually assaulted on February 17, 1994, when she was six months pregnant.  She stated that she was walking on Fort Street near Schaefer Street when a man approached her with a knife, which he held to her side.  The man brought her to the basement of an apparently vacant house, where he sexually assaulted her.  Afterward, Doak received a rape-kit examination at a hospital.  The DNA profile from a sample collected during that examination matched Taylor's DNA profile.

Taylor's defense at trial was that he had engaged in sexual activity with Davis, but that it was consensual.

## II.  SUFFICIENCY OF THE EVIDENCE

### A.  STANDARD OF REVIEW

Taylor argues that the prosecution failed to present sufficient evidence to convict him of CSC-I.  "This Court reviews de novo a defendant's challenge to the sufficiency of the evidence supporting his or her conviction."  *People v Perry*, 317 Mich App 589, 599; 895 NW2d 216 (2016).  This Court reviews "the evidence in the light most favorable to the prosecution to determine whether a rational trier of fact could find that the prosecution proved the crime's elements beyond a reasonable doubt."  *Id.*

### B.  ANALYSIS

The elements of CSC-I under MCL 750.520b(1)(e) are that the defendant engaged in sexual penetration with another person and (2) the defendant "is armed with a weapon or any article used or fashioned in a manner to lead the victim to reasonably believe it to be a weapon."  The elements of CSC-II under MCL 750.520b(1)(f) are that (1) the defendant engaged in sexual penetration with another person and (2) the defendant caused "personal injury to the victim and force or coercion is used to accomplish sexual penetration."  The phrase "force or coercion" is statutorily defined in relevant part to include the following:

> (*i*) When the actor overcomes the victim through the actual application of physical force or physical violence.

---

[1] Currently, there is no limitations period for CSC-I.  See MCL 767.24(1)(a).  However, at the time of the 1994 sexual assault in Doak's case, the limitations period for CSC-I was six years.  Although the period of limitations was expanded to more than six years, the amendment to the statute did not occur until 2001.  *People v Blackmar*, 309 Mich App 199, 201; 870 NW2d 579 (2015).  The statutory amendment "could not revive a charge for which the limitations period had already run."  *Id.*  Accordingly, the six-year limitations period in Doak's case expired in 2000, before the statutory amendment and could not be revived.

(*ii*) When the actor coerces the victim to submit by threatening to use force or violence on the victim, and the victim believes that the actor has the present ability to execute these threats. . . .

It is well-established that a "complainant's testimony can, by itself, be sufficient to support a conviction of CSC." *People v Szalma*, 487 Mich 708, 724; 790 NW2d 662 (2010). Here, Davis testified that Taylor pushed her to the ground, ripped her shirt off, pulled her pants down and penetrated her vagina with his penis. She also testified that after he raped her, Taylor hit her with a baseball bat, striking her shoulders and legs. She stated that at the time she "[j]ust wanted it to end" and that she did not know if she was "going to live or die." She recounted that after the assault she had bruises and little scrapes on her legs and her shoulder. A nurse testified to observing those injuries on Davis at the hospital, and rape kit was taken at the hospital. Taylor's DNA was located in Davis's vagina. On appeal, Taylor argues that Davis's testimony should be discounted because she told multiple, confused and contradictory versions of the facts, which rendered her testimony incredible. However, in reviewing challenges to the sufficiency of the evidence, we "will not interfere with the jury's role of determining the weight of evidence or the credibility of witnesses." *People v McRunels*, 237 Mich App 168, 181; 603 NW2d 95 (1999). Therefore, viewing this evidence in the light most favorable to the jury's verdict, we conclude that Taylor's conviction was supported by sufficient evidence.

## III. OTHER-ACTS EVIDENCE

### A. STANDARD OF REVIEW

Taylor argues that the trial court abused its discretion by allowing the prosecution to introduce Doak's testimony pursuant to MRE 404(b)(1). We review for an abuse of discretion a trial court's decision to admit evidence. *People v Burns*, 494 Mich 104, 110; 832 NW2d 738 (2013). "An abuse of discretion occurs when the court chooses an outcome that falls outside the range of reasonable and principled outcomes." *People v Unger*, 278 Mich App 210, 217; 749 NW2d 272 (2008).

### B. ANALYSIS

MRE 404(b)(1) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." The rule also provides that such evidence may be admissible, however, for "other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identify, or absence of mistake or accident when the same is material . . . ." MRE 404(b)(1). "[T]he rule is *inclusionary* rather than exclusionary." *People v VanderVliet*, 444 Mich 52, 64; 508 NW2d 114 (1993), amended 445 Mich 1205 (1994) (quotation marks and

citation omitted).[2] Yet, because of the dangers inherent in introducing other-acts evidence, there are constraints on the admission of such evidence.

First, procedurally, the prosecution must "provide written notice at least 14 days in advance of trial, or orally on the record later if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial and the rationale, whether or not mentioned in [MRE 404(b)(1)], for admitting the evidence." MRE 404(b)(2). In addition, our Supreme Court has explained that in order to admit other-acts evidence under MRE 404(b)(1), the evidence must be first be offered for a proper purpose, i.e., to show something other than propensity. *VanderVliet*, 444 Mich at 74. Second, "[t]he evidence must be relevant to an issue other than propensity." *Id*. Evidence is relevant if it has "any tendency to make a fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. It is the responsibility of the prosecution to explain how the evidence is relevant to a proper purpose. *People v Dobek*, 274 Mich App 58, 86; 732 NW2d 546 (2007). Third, the probative value of the evidence must not be substantially outweighed by the danger of unfair prejudice. *VanderVliet*, 444 Mich at 74-75; MRE 403. Satisfaction of the third requirement requires the trial court to conduct the balancing test set forth in MRE 403. *Id*. Finally, when admitting other-acts evidence under MRE 404(b)(1), the court may provide a limiting instruction under MRE 105. *Id*. at 75.

In this case, the prosecution moved to admit the other-acts evidence, i.e. Doak's testimony and the DNA evidence related to her case, more than 14 days before trial. The prosecution argued that the other-acts evidence was relevant to show Taylor's intent, motive, and system in doing an act, and that it was also relevant to show a lack of consensual sexual activity. In doing so, the prosecution did not mechanically recite the proper purpose without explaining how the evidence related to the recited purpose. See *People v Crawford*, 458 Mich 376, 387; 582 NW2d 785 (1998) (noting that "[m]echanical recitation of" a proper purpose for the evidence "without explaining how the evidence relates to the recited purposes, is insufficient to justify admission under MRE 404(b)"). Instead, the prosecution highlighted the similarities between the charged and uncharged crimes and argued that its probative value was not substantially outweighed by unfair prejudice.

"[E]vidence of similar misconduct is logically relevant to show that the charged act occurred where the uncharged misconduct and the charged offense are sufficiently similar to support an inference that they are manifestations of a common plan, scheme, or system." *People v Sabin (After Remand)*, 463 Mich 43, 63; 614 NW2d 888 (2000). "To establish the existence of a common design or plan, the common features must indicate the existence of a plan rather than a series of similar spontaneous acts, but the plan thus revealed need not be distinctive or unusual." *Id*. at 65-66 (quotation marks and citation omitted). Yet, "[i]f the prosecution creates a theory of relevance based on the alleged similarity between a defendant's other act and the

---

[2] We note that MRE 404(b) is also a rule of exclusion in that it prohibits the use of a defendant's other acts "to prove the character of a person in order to show action in conformity therewith."

charged offense, we require 'striking similarity' between the two acts to find the other act admissible." *People v Denson*, 500 Mich 385, 403; 902 NW2d 306 (2017).

In *Sabin*, our Supreme Court concluded that there was sufficient similarity and common features between the charged and uncharged acts because (1) the defendant had a father-daughter relationship between both victims, (2) the victims were of a similar age at the time of the abuse, and (3) the defendant used the same type of threat to keep the victims from disclosing the abuse. *Sabin*, 463 Mich at 67.

Here, as in *Sabin*, there are many similarities between the charged act, the sexual assault of Davis, and the uncharged act, the sexual assault of Doak. Davis testified that she was walking alone in a high-drug area when she was approached by Taylor. Likewise, Doak testified that she was walking alone in a high-drug area when she was approached by Taylor. In fact, both assaults took place in the same general area. Doak testified that she was approximately 2 to 3 blocks from the intersection of Fort Street and Schafer Street when she was accosted. A police officer testified that there were approximately 1 ½ miles between that intersection and the area where Davis was assaulted. Another similarity is that Taylor took the women to an isolated location before beginning his sexual assault and in both cases he removed their pants before forcefully penetrating their vaginas with his penis. He left DNA evidence of the assaults on both women. A weapon was used both times and in both cases he left that weapon at the scene after threatening his victims. From these common features, a reasonable factfinder could infer that Taylor had a system that involved (1) targeting young women walking alone in a specific and limited geographical area, (2) taking the women to an isolated or abandoned location, (3) sexually assaulting the women, and (4) using a weapon to enable him to perpetrate sexual abuse on them before leaving the scene and the weapon behind.

In his argument against the uncharged act's admission, Taylor relies on dissimilarities between the charged and uncharged acts. For example, the weapon in Davis's case was a baseball bat that was not used until after the sexual assault, whereas in Doak's case, a knife was used to coerce her to go with Taylor to an abandoned house. Additionally, unlike Davis, Doak was several months pregnant and was not planning on smoking crack cocaine with Taylor before the assault. Further, in Davis's case, Taylor drove her to the isolated location and did not rob her, but in Doak's case, Taylor walked her at knifepoint to an abandoned house before robbing and raping her. Yet, these differences do not warrant reversal. The *Sabin* Court noted that the fact that there are *dissimilarities* between the charged and uncharged acts is not fatal to the admissibility of the uncharged act, but instead noted that such differences in the crimes can allow "reasonable persons [to] disagree on whether the charged and uncharged acts contained sufficient common features to infer the existence of a common system used by [the] defendant in committing the acts." *Id*. at 67. Accordingly, just because the acts were not identical does not mean that they are not strikingly similar enough to establish that Taylor used a common plan or scheme to perpetrate both acts. See *Denson*, 500 Mich at 403.

Taylor also suggests that the probative value of the evidence was substantially outweighed by the danger of unfair prejudice, especially considering that Doak was pregnant. When considering the prejudicial effect of evidence, we consider

the tendency of the proposed evidence to adversely affect the objecting party's position by injecting considerations extraneous to the merits of the lawsuit, e.g., the jury's bias, sympathy, anger, or shock. Moreover, admission of [e]vidence is unfairly prejudicial when . . . [the danger exists] that marginally probative evidence will be given undue or preemptive weight by the jury. [*People v Cameron*, 291 Mich App 599, 611; 806 NW2d 371 (2011) (quotation marks and citations omitted; alterations in original).]

Here, although there was testimony that Doak was pregnant, it was only offered as background information on Doak and it was not presented or argued in a fashion designed to inflame the passions of the jury. During closing and rebuttal arguments, to the extent that the prosecution mentioned Doak's pregnancy, it was only used as a background detail. Indeed, the prosecution very carefully stressed the similarities between the two assaults, thereby confining the arguments related to the evidence to the purpose for which it was admitted. Taylor also asserts that the evidence was unfairly prejudicial because the assault was so old that the statute of limitations had expired on it. Yet, the charged and uncharged acts were only two years apart from each other, and there is nothing on the record to suggest that the other-acts evidence was any more or less prejudicial simply because more than twenty years elapsed between 1994 and 2017. Moreover, the prejudicial effect of the evidence was minimized by the trial court, which properly instructed the jury that the other-acts evidence must not be construed as evidence of Taylor's character or propensity and that the jury must not convict defendant on the basis of his guilt or innocence of the uncharged act. The prejudicial effect was further diminished by Taylor's lawyer, who continuously cautioned the jury on the proper use of the evidence during voir dire, his opening statement, and his closing argument. Therefore, on this record, the trial court did not abuse its discretion by determining that the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice.

Consequently, in granting the prosecution's motion to admit the other-acts evidence, the court considered the similarities and the dissimilarities between the charged and uncharged acts. The court determined that the similarities were sufficient to establish a common plan or scheme, notwithstanding that there were some differences. The court also evaluated the prejudicial effect of the evidence in light of its probative value, and it concluded that, given the availability of a cautionary instruction under MRE 105, the probative value of the evidence was not outweighed by the danger of unfair prejudice. Although a different court may have reached a different result, a court's decision on a close evidentiary decision is not ordinarily an abuse of discretion. *Sabin*, 463 Mich at 67. Consequently, in this case the trial court's decision to admit the evidence was not outside the range of reasonable and principled outcomes.

IV. PROPORTIONALITY

A. STANDARD OF REVIEW

Taylor next contends that his sentence of 37 to 80 years is impermissibly excessive and disproportionate. Because the offense was committed in 1996, before the legislative sentencing guidelines became effective on January 1, 1999, the trial court applied the former judicial sentencing guidelines to determine an appropriate sentence. *People v Hendrick*, 472 Mich 555, 560; 697 NW2d 511 (2005). "From 1983 through 1998, Michigan's courts employed guidelines

crafted by [the Supreme] Court and promulgated by administrative order." *People v Hegwood*, 465 Mich 432, 438; 636 NW2d 127 (2001). The judicial sentencing guidelines "were 'mandatory' only in the sense that the sentencing court was obliged to follow the procedure of 'scoring' a case based on the basis of the circumstances of the offense and the offender, and articulate the basis for any departure from the recommended sentence range yielded by this scoring." *Id*. A sentence imposed under the judicial guidelines is reviewed for an abuse of discretion. *People v Milbourn*, 435 Mich 630, 636; 461 NW2d 1 (1990). "[A] given sentence can be said to constitute an abuse of discretion only if that sentence violates the principle of proportionality, which requires sentences imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender." *Id*.[3]

## B. ANALYSIS

At sentencing, the trial court determined that Taylor's guidelines range under the judicial sentencing guidelines was 240 to 480 months or life. The trial court's 37-year minimum sentence is within this range. "As a general rule, a sentence that falls within the [judicial] guidelines' range is presumed to be neither excessive nor disparate." *People v Kennebrew*, 220 Mich App 601, 609; 560 NW2d 354 (1996). However, "even a sentence within the sentencing guidelines could be an abuse of discretion in unusual circumstances." *Milbourn*, 435 Mich at 661.

Taylor argues that his sentence is disproportionate because the offense was committed 21 years before sentencing, and the absence of similar offenses since then shows that he has already been rehabilitated. Even if the 21-year lapse between Taylor's commission of the sexual assault and his conviction may be considered unusual, the record does not support his claim that he has been rehabilitated. His presentence report indicates that he has a criminal history spanning a period of 25 years, and involving six felonies and 24 misdemeanors. Although most of Taylor's prior convictions involve property crimes for larceny or retail fraud, his most recent conviction before the instant case was in 2012 and resulted in a prison sentence of 6 months to 2 1/2 years. Taylor was not discharged from prison until 2015, after fully serving his maximum sentence. Thus, the claimed rehabilitation demonstrated by the lack of additional allegations of sexual abuse between the commission of the sentencing offense and the time of sentencing, is not actually supported by the record.

Taylor also argues that his sentence is excessive because he is 50 years old and in poor health, which will essentially ensure that he will die before serving his minimum sentence. In *People v Lemons*, 454 Mich 234, 257; 562 NW2d 447 (1997), our Supreme Court rejected the defendant's argument that his sentences of 60 to 90 years were disproportionate because the

---

[3] Taylor was sentenced under the former judicial sentencing guidelines, so MCL 769.34(10) does not apply to this case. Accordingly, to the extent that Taylor argues on appeal that his right to have his sentence reviewed is improperly constrained by MCL 769.34(10), we find his argument to be without merit.

defendant would be more than 96 years old when his sentences were completed. The Court stated:

> [W]e find no basis in *Milbourn* for a requirement that the trial judge tailor every defendant's sentence in relationship to the defendant's age. Persons who are sixty years old are just as capable of committing grievous crimes as persons who are twenty years old. We find no principled reason to *require* that a judge treat similar offenses that are committed by similarly depraved persons differently solely on the basis of the age of the defendant at sentencing where the Legislature has authorized the judge to impose life or *any* term of years. A judge may, however, consider a defendant's age at sentencing in deciding whether the sentence about to be imposed is proper, just as the judge considers the recommended range under the guidelines and any other factors not expressly prohibited by law. [*Lemons*, 454 Mich at 258-259.]

Similarly, we find no principled reason why Taylor's current age and health status render his sentence disproportionate.

Finally, Taylor argues that he accepted responsibility for his actions and expressed remorse for his conduct. Although the trial court expressed its appreciation at sentencing that Taylor was willing to accept responsibility for his conduct, this is not an unusual circumstance to overcome the presumptive proportionality of Taylor's sentence. Taylor's sentence, although lengthy, is proportionate to the seriousness of the offense and his lengthy criminal history. Accordingly, the trial court did not abuse its discretion.

Affirmed.

/s/ Douglas B. Shapiro
/s/ Jane M. Beckering
/s/ Michael J. Kelly