*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

BOOKER T. BROWN,

        Defendant-Appellant.

UNPUBLISHED
February 21, 2025
10:43 AM

No. 366406
St. Clair Circuit Court
LC No. 22-000796-FC

Before: MARIANI, P.J., and RIORDAN and FEENEY, JJ.

PER CURIAM.

Defendant appeals as of right his jury-trial convictions of assault with intent to commit murder (AWIM), MCL 750.83, and unlawful imprisonment, MCL 750.349b. Defendant was sentenced, as a fourth-offense habitual offender, MCL 769.12(1)(a), to 600 to 900 months' imprisonment for each conviction, to be served concurrently. We affirm.

## I. FACTS AND PROCEDURAL HISTORY

This case arises out of defendant's April 6, 2022 assault of Angela Lavere ("Lavere") at her home. Defendant and Lavere were friends, and defendant frequently visited Lavere's home. After conversing with defendant on the night of April 6, 2022, Lavere awoke to defendant standing in her bedroom doorway. He held a knife in one hand and Lavere's cell phone in the other, and demanded to know the personal identification (PIN) number for her debit card. He told her, "[Y]ou're not going anywhere," before punching her in the face. Defendant then jumped on top of Lavere and slashed her throat with the knife. When Lavere gave defendant her PIN number and pleaded with him to stop, defendant told her: "I'm going to kill you and then kill myself."

Lavere tried to escape the bedroom, but defendant put his hands around her throat and choked her until she felt lightheaded. Lavere fell to the floor as defendant attempted to stab her with the knife. She fended off the attack by grabbing the knife blade. Defendant and Lavere continued their struggle before defendant left the bedroom and returned holding a hammer. He swung the hammer and hit Lavere on the side of the head above her left ear. Although she told defendant, "[Y]ou're going to make me bleed to death[,]" defendant hit her a second time with the hammer on the top of her head. Lavere again fell to the ground, landing in her bedroom closet and

decided to play dead. Rather than checking her pulse or ensuring she was alive, defendant pushed Lavere's legs into the closet and closed the closet door; defendant then pushed her dresser in front of it.

Lavere laid in her closet and lost consciousness for several hours. After pushing the closet door open, she fled to a local bar where bar patrons and staff observed she had significant injuries and blood loss. The emergency room physician who treated Lavere confirmed the severity of these injuries.

Defendant was arrested and charged with AWIM and unlawful imprisonment. The trial court instructed the jury that to find defendant guilty of AWIM, it had to find defendant "intended to kill the person he assaulted." The jury could find such intent "by what he said, what he did or how he did it, or by the facts and circumstances in evidence." The jury convicted defendant of both charges. The trial court sentenced defendant to 600 to 900 months' imprisonment. Defendant now appeals.

## II. SUFFICIENCY OF THE EVIDENCE

Defendant argues this Court should reverse his conviction of AWIM because the prosecution did not introduce sufficient evidence of his actual intent to kill. We disagree.

## A. STANDARD OF REVIEW

This Court reviews defendant's challenge to the sufficiency of the evidence de novo. *People v Montague*, 338 Mich App 29, 44; 979 NW2d 406 (2021). We deferentially review the evidence in the light most favorable to the prosecution and consider "whether there was sufficient evidence to justify a rational trier of fact in finding guilt beyond a reasonable doubt." *People v Harris*, 495 Mich 120, 126; 845 NW2d 477 (2014). This Court must make all reasonable inferences in favor of sustaining the conviction, keeping in mind "[i]t is for the trier of fact, *not the appellate court*, to determine what inferences may be fairly drawn from the evidence . . . ." *People v Oros*, 502 Mich 229, 239; 917 NW2d 559 (2018). Because it is difficult to prove intent directly, "minimal circumstantial evidence will suffice to establish the defendant's state of mind, which can be inferred from all the evidence presented." *People v Kanaan*, 278 Mich App 594, 622; 751 NW2d 57 (2008). The weapon or instrument used by a defendant may be considered and of an intent to kill may be inferred from a defendant's use of a dangerous weapon. *People v DeLisle*, 202 Mich App 658, 672; 509 NW2d 885 (1993). A "dangerous weapon" has been defined by our Supreme Court:

> Some weapons carry their dangerous character because so designed and are, when employed, per se, deadly, while other instrumentalities are not dangerous weapons unless turned to such purpose. The test as to the latter is whether the instrumentality was used as a weapon and, when so employed in an assault, dangerous. The character of a dangerous weapon attaches by adoption when the instrumentality is applied to use against another in furtherance of an assault. When the purpose is evidenced by act, and the instrumentality is adapted to accomplishment of the assault and capable of inflicting serious injury, then it is, when so employed, a

dangerous weapon. [*People v Vaines*, 310 Mich 500, 505; 17 NW2d 729 (1945) (citation omitted).]

In this instance, defendant's wielding of a knife and a hammer on multiple occasions to effectuate the assault constitute the use of a "dangerous weapon," permitting an inference of an intent to kill.

## B. ANALYSIS

Defendant argues he could not have intended to kill Lavere because her injuries were not significant or life-threatening. We disagree because this Court's precedent analyzes intent to kill by what the defendant said or did, not the effect on the victim.

The prosecution presented sufficient evidence of defendant's statements and actions to show he had the intent to kill Lavere. As defendant notes, this Court has held: "the specific intent to do great bodily harm, . . . is less than the specific intent to kill necessary to sustain a conviction of assault with intent to commit murder." *People v Brown*, 267 Mich App 141, 149; 703 NW2d 230 (2005). Although defendant suggests the prosecution confused the types of intent, defendant's position confuses two offenses: AWIM and murder. As this Court has noted: "[I]t is only the fortunate fact of the victim's survival—not a difference in the defendant's conduct—that renders the defendant guilty of AWIM as opposed to murder." *People v Henderson*, 306 Mich App 1, 7; 854 NW2d 234 (2014), overruled in part on other grounds by *People v Reichard*, 505 Mich 81 (2020). Defendant's argument contorts this distinction between AWIM and murder, and requires the jury to infer that Lavere's survival without life-threatening injuries suggests defendant is not guilty of AWIM.

Rather, this Court's precedent allows the jury to make the inference that defendant's conduct demonstrated his intent to kill. Specifically, defendant slashed Lavere's throat with a knife, leaving a laceration on her neck. He also tried to stab her multiple times. In *People v Ericksen*, 288 Mich App 192, 195; 793 NW2d 120 (2010), a jury convicted the defendant of AWIM after he stabbed the victim several times. As in this matter, the defendant hid the knife on his person before committing the assault. *Id.* This Court held the defendant's act of stabbing the victim provided sufficient evidence for the jury to infer the defendant's intent to kill. *Id.* at 196.

Further, defendant assaulted Lavere when he choked her until she felt lightheaded and could not breathe. In *People v McRunels*, 237 Mich App 168, 181-182; 603 NW2d 95 (1999), this Court sustained the defendant's AWIM conviction when he choked the victim until she lost consciousness. Based on the record, the jury in this matter could similarly infer defendant intended to kill Lavere from his act of choking her.

Defendant's statements during these assaults present additional evidence of his intent to kill. For example, when Lavere pleaded with defendant, "I want to live, I want to live, don't, don't do this," defendant told her to "shut up." Defendant added: "I'm going to kill you and then kill myself." In *McRunels*, 237 Mich App at 182, this Court sustained the defendant's AWIM conviction after the defendant "told several people he intended to kill [the victim] . . . ."

Additionally, defendant hit Lavere in the head with a hammer twice, even though she told him, "[Y]ou're gonna make me bleed to death." When Lavere played dead after defendant hit her, he did not check to see whether she was alive. These facts allowed the jury to reasonably infer

defendant thought he had killed Lavere.  Although this inference was not necessary to find an intent to kill, defendant's act of twice swinging a hammer at Lavere's head provides sufficient evidence of his intent.

Taken together, the evidence of defendant's statements and actions is sufficient for the jury to find defendant had an intent to kill and to sustain his conviction of AWIM.  Defendant contends Lavere's injuries were not sufficiently serious to demonstrate defendant's intent to kill.  Even if this argument was legally relevant, defendant misstates the record and minimizes the life-threatening effects of his assault.  Defendant notes Lavere did not require a blood transfusion. Yet medical evidence was presented supporting the conclusion that Lavere's loss of consciousness was consistent with severe blood loss and required immediate treatment to prevent cardiac arrest.  Further, defendant characterizes the laceration on Lavere's neck as superficial.  But any laceration in the area where the defendant slashed Lavere is a level-one trauma event, the most serious designation, because of the proximity to vital veins and arteries.  These facts belie defendant's argument that Lavere's injuries were insignificant.  No matter the extent of Lavere's injuries, the fact defendant did not succeed in killing her does not outweigh the evidence of his intent to kill, which is sufficient to sustain his conviction of AWIM.

## III.  CONCLUSION

For the reasons discussed above, we affirm.


/s/ Philip P. Mariani
/s/ Michael J. Riordan
/s/ Kathleen A. Feeney

-4-