# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

SHANE RUSSELL WESTBROOK,

        Defendant-Appellant.

UNPUBLISHED
March 27, 2018

No. 335161
Jackson Circuit Court
LC No. 15-005088-FC

Before: O'CONNELL, P.J., and HOEKSTRA and SWARTZLE, JJ.

PER CURIAM.

Following a jury trial, defendant was convicted of five counts of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1)(a), and two counts of second-degree criminal sexual conduct (CSC-II), MCL 750.520c(1)(a). Defendant was found not guilty of two additional counts of CSC-I. On appeal, defendant challenges the prosecutor's involvement in investigating the alleged assault, evidence allegedly discovered as a result of that involvement, and his counsel's assistance in navigating these issues. We affirm.

## I. BACKGROUND

This case involves defendant sexually assaulting his former girlfriend's daughter, TS, when the victim was 5 to 11 years old. The charges against defendant stem from the victim's disclosure of the assaults when the victim was 22 years old. TS did not disclose the sexual assaults to anyone for years until after her half-sister, SW, disclosed that defendant also sexually assaulted her and Child Protective Services (CPS) became involved. TS and SW share the same biological mother, Shane Rose.[1] Defendant is SW's biological father and lived with TS when he and Shane were together. The two separated in 2005.

After SW reported the assault, a detective was assigned to investigate the case and, eventually, CPS sought to terminate defendant's parental rights. Sometime between the filing of the termination petition and the filing of the criminal charges in this case, TS met with the

---

[1] Because of the shared last name and familial relationships, we will use first names when referring to defendant's wife and ex-girlfriend.

prosecutor without the detective being present. TS and the prosecutor met for approximately one hour and appear to have discussed defendant's alleged abuse of TS, although the exact details of this conversation are not apparent from the record.

Defendant subsequently terminated his parental rights to SW and two other children, thereby ending the termination case. Defendant was then charged criminally for the sexual assault of TS. It appears that TS met again with the prosecutor before trial to go over her testimony and discuss the legal definition of "penetration." Before trial, TS also had a 15-minute phone conversation with the detective and met briefly with the detective in-person so that the detective could pull evidence off of her phone. Additionally, one week before trial, SW's stepmother, Jessica Westbrook, met with the prosecutor outside of the presence of the detective and disclosed details regarding defendant's alleged sexual assault of a third victim, AS.

At a pretrial hearing, defense counsel brought to the trial court's attention a potential issue regarding the prosecutor acting as an investigator before any charges were filed against defendant. Defense counsel requested the prosecutor's notes from her interviews with TS and Jessica, arguing that it was evidence required to be turned over during discovery. The prosecutor refused to turn over her notes, claiming that defense counsel was not entitled to them because they were protected work product. Defense counsel noted that he anticipated filing a motion to have the prosecutor's office recused from the case; however, no such motion was ever filed. Similarly, defense counsel did not place the prosecutor on his witness list. Defense counsel raised the issue again on the first day of trial. The trial court did not force the prosecutor to turn over her notes to defendant, but it noted that defense counsel could continue to raise the objection during trial. The prosecution provided pretrial notice of its intent to admit other acts of sexual conduct involving a minor, but did not provide pretrial notice of its intent to admit other-acts evidence under MRE 404(b).

At trial, TS testified that defendant sexually assaulted her nine times when she was 5 to 11 years old. According to TS, defendant touched her vagina with his fingers, digitally penetrated her vagina, penetrated her vagina with his penis, and attempted to penetrate her anus with his penis. TS testified that, on multiple occasions, the assaults caused her to bleed. According to TS, defendant told her that, if she told anyone about the assaults, defendant would hurt her and her sisters. SW and AS testified, under MCL 768.27a, that defendant sexually assaulted them.

Several other pieces of other-acts evidence were also admitted at trial. A CPS investigator testified regarding the termination petition and defendant's voluntary termination of his parental rights. Shane testified that defendant would cheat on her during their relationship and that numerous custody battles followed their split. TS testified that defendant would verbally abuse her and AS and hit both of them with a belt. TS also testified that defendant duct-taped her and AS and that defendant put AS in a dog cage. Jessica testified that defendant confessed to her that he had a sexual encounter with AS and that the experience was "exhilarating." Jessica also testified that she and defendant would use duct tape during sex.

Defendant objected to the evidence that he duct-taped TS, that Jessica and defendant used duct tape during sex, that defendant hit TS and AS with a belt, and that defendant put AS in a dog cage. The trial court found each of these pieces of evidence relevant, but did not perform a

-2-

prejudice analysis. Defendant did not contemporaneously object to any lack of pretrial notice, nor did the trial court determine whether pretrial notice could be excused for good cause. Defendant did not object to the remaining other-acts evidence. Through cross-examination, defense counsel identified several pieces of evidence that were not reported to the detective: (1) TS experienced bleeding following the alleged assaults; (2) defendant would duct-tape TS and AS; (3) defendant put AS in a dog cage; (4) defendant threatened TS; and (5) defendant confessed to Jessica that he had a sexual encounter with AS.

A jury found defendant guilty of the above offenses. The trial court sentenced defendant to concurrent terms of 25 to 50 years of imprisonment for the CSC-I convictions and six to ten years of imprisonment for the CSC-II convictions. This appeal followed.

## II. ANALYSIS

Defendant raises several claims on appeal. Specifically, defendant argues that the prosecutor should have been disqualified because she took on the role of investigator and, relatedly, the prosecutor should have disclosed to defendant the notes she took during her interviews with witnesses. Defendant also claims that the admission of certain other-acts evidence denied him a fair trial. The prosecutor engaged in misconduct by personally attacking and denigrating defendant, according to defendant. Finally, defendant asserts that he received ineffective assistance of trial counsel. As explained below, we reject all of defendant's claims of reversible error.

A.    Necessary Witness and Discovery of Prosecutor's Notes

First, defendant argues that he was denied due process and a fair trial because the prosecutor "adopted the role of investigator when she was the primary interviewer" of TS and other witnesses. Defendant claims that the prosecutor should have been disqualified from being the trial attorney in this case and that the trial court should have required her to disclose her interview notes to defendant.

Although defense counsel requested the prosecutor's notes on several occasions and made reference during trial to the prosecutor interviewing witnesses and learning details not disclosed to the detective, defense counsel never moved to disqualify the prosecutor as a necessary witness or request an evidentiary hearing on the matter. Thus, the issue of disqualification is unpreserved and we review for plain error affecting defendant's substantial rights. *People v Carines*, 460 Mich 750, 764; 597 NW2d 130 (1999).

Michigan attorneys are governed by the Michigan Rules of Professional Conduct (MRPC), under which a prosecutor generally cannot be both a witness and an advocate at trial. *People v Petri*, 279 Mich App 407, 417; 760 NW2d 882 (2008). Pertinent to this dispute, MRPC 3.7(a)(1) provides that a "lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness" except where the testimony relates to an uncontested issue. "While there is no Michigan case explicitly defining the term 'necessary witness,' both the Michigan Supreme Court and this Court have found that attorneys are not necessary witnesses if the substance of their testimony can be elicited from other witnesses." *People v Tesen*, 276 Mich App 134, 144; 739 NW2d 689 (2007). It follows that to disqualify a prosecutor, the defendant

bears the burden of showing that the prosecutor's testimony is relevant to a contested issue and cannot be elicited from any other witness. *Petri*, 279 Mich App at 417.

In this case, Detective Huttenlocker was the lead detective. He interviewed TS over the telephone and in-person. He also interviewed Jessica, Shane, SW, AS, and defendant. He memorialized his findings in a police report, and defendant had access to the detective's report before trial. While the prosecutor did interview TS by herself before criminal charges were filed—an act that could suggest, standing alone, that the prosecutor was investigating, not preparing for a criminal trial, see *United States v Bin Laden*, 91 F Supp 2d 600, 623-624 (SD NY, 2000)—it is noteworthy that the abuse-and-neglect case in family court was still open. Given the open family court case, the prosecutor's pre-criminal-charge interview with TS is not alone sufficient to show that she stepped out of her role as prosecutor and into the role of investigator.

Defendant also maintains that the prosecutor learned certain details during her interview with Jessica that were not disclosed in Detective Huttenlocker's report. Defense counsel had the opportunity to interview Jessica but did not do so. The mere fact that a third person is not present when, during witness preparation, a witness discloses details not previously disclosed does not require disqualification of the prosecutor. See *United States v Tamura*, 694 F2d 591, 600-601 (CA 9, 1982) (concluding that a prosecutor was not a necessary witness when the prosecutor's testimony would have been duplicative of the testimony given by the witness the prosecutor spoke with). While a prosecutor could avoid even the possibility of crossing the prosecutorial/investigatory line by having a detective or other third person present whenever she meets with a witness, see *Bin Laden*, 91 F Supp at 623-624, defendant has not shown on this record that the prosecutor crossed that line in this case.

Related to defendant's argument that the prosecutor should have been disqualified is his argument that the prosecutor's notes should have been discoverable. Defense counsel asked the trial court for the prosecutor's notes several times, and thus the issue is preserved for appellate review. "A trial court's decision regarding discovery is reviewed for [an] abuse of discretion." *People v Phillips*, 468 Mich 583, 587; 663 NW2d 463 (2003). "An abuse of discretion occurs when the court chooses an outcome that falls outside the range of reasonable and principled outcomes." *People v Unger*, 278 Mich App 210, 217; 749 NW2d 272 (2008). This Court reviews de novo defendant's claim that the prosecutor's failure to disclose evidence violated his constitutional right to due process. *People v Schumacher*, 276 Mich App 165, 176; 740 NW2d 534 (2007).

MCR 6.201(A)(2) requires that, upon request, a party in a criminal proceeding must provide all other parties "any written or recorded statement . . . by a lay witness whom the party may call at trial." As applied to notes from a witness interview, the rule makes discoverable those parts of the notes that: (1) contain a contemporaneous recording of a "substantially verbatim recital of an oral statement by the person making it"; (2) were signed by the witness; or (3) were otherwise unambiguously and specifically adopted or approved by the witness. *People v Holtzman*, 234 Mich App 166, 178-179; 593 NW2d 617 (1999). Additionally, MCR 6.201 must be read in light of MCR 2.302(B)(3)(a), which protects from discovery "the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation." See *People v Gilmore*, 222 Mich App 442, 449-450; 564 NW2d 158

(1997). The purpose of these rules is to separate the actual evidentiary statements of witnesses from the subjective impressions of the attorney interviewing them. See *Holtzman*, 234 Mich App at 179.

As noted above, this record does not support defendant's assertion that the prosecutor crossed the line and became an investigator. Thus, the prosecutor's notes are entitled to the protection afforded to an attorney's work product. Moreover, there is nothing in the record to suggest that TS or any other witness signed or otherwise adopted or approved the prosecutor's notes, and therefore there is nothing to suggest that these notes included any statements subject to disclosure under the court rules. Nor has defendant identified any *favorable* detail that came out of the prosecutor's interview with TS or Jessica, undermining any claim of a violation of MCR 6.201(B)(1) or *Brady v Maryland*, 373 US 83, 87; 83 S Ct 1194; 10 L Ed 2d 215 (1963). See *United States v Bagley*, 473 US 667, 676; 105 S Ct 3375; 87 L Ed 2d 481 (1985) (holding that *Brady* does not require the prosecutor to "deliver his entire file to defense counsel, but only to disclose evidence favorable to the accused that, if suppressed, would deprive the defendant of a fair trial).

B.    Other-Acts Evidence

Next, defendant argues that he was denied due process and a fair trial by the prosecution's introduction of other-acts evidence. During the trial, the prosecution introduced multiple instances of other-acts evidence. Defense counsel objected to the evidence that Jessica and defendant used duct tape during sex; that defendant hit TS and AS with a belt; that defendant duct taped TS; and that defendant put AS in a dog cage. Accordingly, defendant preserved his argument regarding those instances of other-acts evidence. See *People v Considine*, 196 Mich App 160, 162; 492 NW2d 465 (1992). Defense counsel, however, did not object to testimonial evidence regarding the prior CPS involvement and defendant's voluntary termination of his parental rights; that defendant and Shane had many custody battles; that defendant cheated on Shane during their relationship; and that defendant verbally abused TS and AS. Defendant's appellate objections to the admission of these pieces of evidence are therefore unpreserved. *Id*.

We review preserved objections regarding the admission of evidence for an abuse of discretion. *People v Aldrich*, 246 Mich App 101, 113; 631 NW2d 67 (2001). Unpreserved evidentiary issues are reviewed for plain error affecting defendant's substantial rights. *Carines*, 460 Mich at 764.

The admissibility of other-acts evidence involves the interplay of several rules of evidence. *People v Vandervliet*, 444 Mich 52, 74-75; 508 NW2d 114 (1993). In *Vandervliet*, 444 Mich at 74-75, the Michigan Supreme Court outlined a four-step process for evaluating the admissibility of evidence under MRE 404(b). First, the evidence must be relevant to an issue other than propensity under MRE 404(b). *Id*. at 74. "Stated otherwise, the prosecutor must offer the other acts evidence under something other than a character to conduct theory." *Id*. Second, the evidence must be relevant under MRE 402 to an issue or fact that was of consequence at the trial. *Id*. Third, the trial court must determine, under MRE 403, whether the danger of undue prejudice substantially outweighed the probative value of the evidence considering the availability of other means of proof and other facts appropriate for making the decision. *Id*. at 74-75. Lastly, the trial court may, upon request, provide a limiting instruction under MRE 105.

*Id*. at 75; see also *People v Denson*, 500 Mich 385, 398; 902 NW2d 306 (2017) (explaining that, to be admissible under MRE 404(b), other-acts evidence must be offered for a proper purpose as well as be logically relevant (i.e., material and probative), and the probative value must not be substantially outweighed by unfair prejudice).

Relatedly, in a criminal case involving sexual abuse of a minor, MCL 768.27a provides that evidence that defendant committed a similar offense against a minor may be admitted for any purpose for which it is relevant, including propensity purposes. *People v Watkins*, 491 Mich 450, 469-470; 818 NW2d 296 (2012). Evidence admissible under MCL 768.27a, however, may be "excluded under MRE 403 if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by consideration of undue delay, waste of time, or needless presentation of cumulative evidence." *Id*. at 481 (internal citation and quotation marks omitted).

As an initial matter, both MRE 404(b) and MCL 768.27a require the prosecutor to give pretrial notice of the intent to introduce other-acts evidence. Defendant points out on appeal that the prosecutor failed to provide pretrial notice of the intent to admit other-acts evidence under MRE 404(b). The prosecutor did provide such notice of the intent to admit other acts of sexual conduct of a minor under MCL 768.27a. Nevertheless, defendant did not contemporaneously object to the admission of the other-acts evidence on this ground. Accordingly, defendant has waived this argument on appeal. *Considine,* 196 Mich App at 162.

Turning to the merits, regarding Jessica's testimony that defendant and she used duct tape during sex, we conclude that the trial court abused its discretion in admitting the evidence because the evidence was not relevant to anything other than propensity under MRE 404(b). The evidence was not submitted to show motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, because the victim never testified that defendant duct taped her during any of the sexual assaults. We conclude, however, that such error was harmless. As we discuss next, the victim's testimony that defendant duct taped her was admissible. Erroneously admitted evidence that is cumulative of admissible evidence may be considered harmless error. See *People v McRunels*, 237 Mich App 168, 185; 603 NW2d 95 (1999) (finding the improperly admitted testimony harmless because it was cumulative). Because the victim's testimony in that regard was admissible, we conclude that a different result would not have been achieved had the error in admitting Jessica's statements not occurred. That is, it does not "affirmatively appear that the error complained of has resulted in a miscarriage of justice," MCL 769.26, or was outcome determinative, *People v Douglas*, 496 Mich 557, 566; 852 NW2d 587 (2014).

Regarding the victim's testimony surrounding the leather belt, duct tape, and the dog cage, we conclude that such testimony was admissible under MRE 404(b). First, we conclude that the evidence was relevant to issues other than propensity—particularly to the victim's reasons for nondisclosure or late disclosure, i.e., that she was afraid of defendant, and to defendant's "grooming" behavior. Second, we conclude that the evidence was relevant under MRE 401 and thus admissible under MRE 402. Lastly, we conclude that the probative value of the evidence outweighed the risk of unfair prejudice. The victim's testimony was "tailored to its proper purpose, and did not delve into unnecessary detail or unduly invite the jury to draw an impermissible character-to conduct inference from it." *People v Jackson*, 498 Mich 246, 277; 869 NW2d 253 (2015). The evidence was probative of the victim's reasons for delayed

disclosure and of defendant's grooming techniques. And although the evidence was prejudicial, it was not unfairly prejudicial.

Regarding the testimony about CPS's efforts to terminate defendant's parental rights to his children and that defendant voluntarily gave up his parental rights, we conclude that such evidence was admissible under MCL 768.27a. In this case, the prosecution admitted testimonial evidence that defendant committed a sexual assault against SW, which was the basis of the abuse-and-neglect petition seeking to terminate defendant's parental rights. This evidence would potentially be inadmissible under MRE 404(b). But because MCL 768.27a precludes MRE 404(b), *Watkins*, 491 Mich at 476-477, we conclude that the trial court properly admitted the evidence. Additionally, we conclude that the probative value of the evidence outweighed the risk of unfair prejudice. Defendant claimed that he never sexually abused the victim. But evidence that he sexually abused SW was probative of his sexual abuse of the victim. *Id*. at 470; MCL 768.27a. The probative value of the evidence was not limited to propensity as it also demonstrated a plan or system in the commission of the sexual assault on the victim. Because the evidence was properly admitted under MRE 404(b), including for its probative value, defendant has not demonstrated plain error affecting his substantial rights.

With respect to the testimonial evidence that that defendant cheated on Shane and had custody battles with her, we conclude that such evidence was irrelevant under MRE 401 and, thus, inadmissible under MRE 402. Accordingly, defendant has demonstrated plain error. We conclude, however, that defendant has not demonstrated that such plain error affected his substantial rights because it did not appear to affect the outcome of the lower court proceedings. *Carines*, 460 Mich at 763. Even after eliciting the testimony about defendant cheating on Shane, and the testimony about their custody issues, Shane continued to testify that, before she moved to Florida, she and defendant got along and that they shared joint custody of SW. Shane's statements about defendant essentially being untrustworthy, but that she also got along with him and shared joint custody of their daughter with him, were conflicting, and therefore, were matters of her credibility for the jury to judge. *People v Lemmon*, 456 Mich 625, 636-637; 576 NW2d 129 (1998). Defendant has not demonstrated that the error "resulted in the conviction of an actually innocent defendant" or "seriously affected the fairness, integrity, or public reputation of the judicial proceedings independent of the defendant's innocence." *Carines*, 460 Mich at 763 (internal citation and notation omitted).

As to the victim's testimony that defendant verbally abused her and AS, we conclude that such testimony was admissible under MRE 404(b). It does not appear that the purpose of the evidence was to show that because defendant called the girls names, he must have sexually abused the victim. We infer from the context of the direct examination of the victim that the purpose of the evidence was to demonstrate the progression of defendant's abusive behavior from verbal abuse to physical abuse to sexual abuse. We similarly conclude that the evidence was relevant under MRE 401, and was thus admissible under MRE 402. A fact or issue that was of consequence at the trial was whether defendant sexually assaulted the victim. That defendant verbally abused the victim first makes that fact or issue more probable than it would be without the evidence. MRE 401. Moreover, the probative value of the evidence outweighed the risk of

unfair prejudice. The evidence was probative to show, as discussed, defendant's progression of abuse from verbal, to physical, to sexual. And although the evidence was prejudicial, it was not unfairly prejudicial. There was minimal risk that the jury would conclude that because defendant called the girls names, he must have sexually assaulted the victim. Accordingly, we conclude that defendant has not demonstrated plain error affecting his substantial rights regarding this evidence.

C.    Prosecutorial Misconduct

Defendant next claims that the prosecutor committed misconduct during her opening statement and closing argument when she said, "It's been said that a leopard doesn't change his spots. A zebra cannot change his stripes. Once a pedophile, always a pedophile and this defendant is on trial for nine counts of criminal sexual conduct." Defendant did not preserve this issue for appeal by contemporaneously objecting and requesting a curative instruction. *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010). Therefore, we review the issue for plain error affecting defendant's substantial rights. *People v Brown*, 279 Mich App 116, 134; 755 NW2d 664 (2008).

The federal and Michigan Constitutions guarantee a defendant's right to a fair trial. US Const, Am VI; Const 1963, art 1, § 20; *People v Conley*, 270 Mich App 301, 307; 715 NW2d 377 (2006). The test for prosecutorial misconduct is whether defendant was denied a fair and impartial trial. *People v Dobek*, 274 Mich App 58, 63; 732 NW2d 546 (2007). "The propriety of a prosecutor's remarks depends on all the facts of the case." *People v Rodriguez*, 251 Mich App 10, 30; 650 NW2d 96 (2002). "A prosecutor may not make a factual statement to the jury that is not supported by the evidence, but he or she is free to argue the evidence and all reasonable inferences arising from it as they related to his or her theory of the case." *People v Dobek*, 274 Mich App at 66 (internal citations omitted). A reviewing court cannot find error requiring reversal when a curative instruction could have alleviated any prejudicial effect. *Unger*, 278 Mich App at 235.

In this case, the prosecutor's statements regarding a leopard not changing its spots or a zebra not changing its stripes were a theme. It does not appear from the context of the statements that the prosecutor argued that defendant was "a preying animal hiding in the weeds to attack [the jury] and their families," as defendant claims in his brief on appeal. Rather, the theme seemed to be a euphemism for a proposition along the lines of "people do not change." Moreover, the prosecutor's statement of "once a pedophile, always a pedophile" was not misconduct because, as discussed, MCL 768.27a allows for the introduction of evidence that defendant committed a sexual assault against a different victim. We conclude that the prosecutor properly argued a fact—that defendant previously sexually assaulted a minor—and a reasonable inference from that fact—that he committed the sexual assaults charged in this case. Just because the prosecutor did not confine her argument to the blandest possible terms and instead argued a theme of leopard spots and zebra stripes, or even "once a pedophile, always a pedophile," does not mean that the prosecutor committed misconduct. Regardless, the trial court's instruction to the jury that "[t]he lawyers' statements and arguments are not evidence" cured any prejudicial effect the comments generated. *People v Akins*, 259 Mich App 545, 563; 675 NW2d 863 (2003). Accordingly, we hold that the prosecutor did not commit misconduct, and defendant was not denied a fair trial.

D.     Ineffective Assistance of Counsel

Defendant lastly argues that his trial counsel was ineffective when counsel failed to list the investigating prosecutor as a necessary witness, failed to move to have her disqualified from being the trial attorney, and failed to file motions for discovery. Defendant additionally claims that defense counsel was ineffective when he failed to object concerning the other-acts and character evidence and when he failed to have the trial court conduct a probative-value/unfair-prejudice analysis of the other-acts and character evidence. Defendant further claims ineffective assistance of counsel for defense counsel's failure to object to the prosecutor's improper statements during opening statements and closing arguments. Lastly, defendant claims ineffective assistance of counsel for defense counsel's failure to meet with and investigate the prosecution's witnesses, failure to investigate the sisters' medical records, failure to consult with or use an expert witness of his own, and failure to meet with or call defendant's requested witnesses.

A claim of ineffective assistance of counsel is a mixed question of fact and law. We must review the trial court's findings of fact for clear error, and we must review questions of law de novo. *People v Trakhtenberg*, 493 Mich 38, 47; 826 NW2d 136 (2012). Although defendant preserved the claim by filing a motion to remand, we denied the motion.[2] Because a *Ginther*[3] hearing was never held, review is limited to mistakes apparent on the record. See *People v Payne*, 285 Mich App 181, 188; 774 NW2d 714 (2009).

To succeed on a claim of ineffective assistance of counsel, the defendant must prove: (1) that the attorney made an error, and (2) that the error was prejudicial to defendant. *Strickland v Washington*, 466 US 668, 687; 104 S Ct 2052; 80 L Ed 2d 674 (1984). That is, first, defendant must show that trial counsel's performance fell below an objective standard of reasonableness. *People v Russell*, 297 Mich App 707, 715; 825 NW2d 623 (2012). The Court must analyze the issue with a strong presumption that trial counsel's conduct fell within the wide range of reasonable professional assistance, and this requires that the defendant overcome the presumption that the challenged action or inaction might be considered sound trial strategy. *People v Leblanc*, 465 Mich 575, 578; 640 NW2d 246 (2002). Decisions about whether to call or question a witness are presumed to be matters of trial strategy. *Russell*, 297 Mich App at 716. Second, defendant must show that, but-for trial counsel's deficient performance, a different result would have been reasonably probable. *Id.* at 716. "Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010) (internal citation omitted).

Defendant first argues that defense counsel was ineffective for failing to list the prosecutor as a necessary witness, failing to move to have her disqualified from being the trial

---

[2] *People v Westbrook*, unpublished order of the Court of Appeals, entered April 25, 2017 (Docket No. 335161).

[3] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

attorney, and failing to file motions for discovery (presumably of the prosecution's interview notes). We disagree.

We acknowledge that defense counsel may have erred by not listing the prosecutor as a necessary witness. With that said, defendant cannot show that but-for defense counsel's purported error a different result would have been reasonably probable. Had defense counsel listed the prosecutor as a necessary witness, the trial court would have determined that she was not such a witness because the substance of the prosecutor's testimony could have been elicited from the victim and the witnesses that the prosecutor interviewed, all of whom defense counsel could have interviewed. Moreover, unlike in *Tesen*, neither the victim nor Jessica—the witnesses from whom defendant claims provided details not found in the investigator's report— were minors when they were interviewed by the prosecutor, so whether the prosecutor was trained in the forensic-interview protocol appropriate for interviewing a child would have been irrelevant to the jury. *Tesen*, 276 Mich App at 144. Thus, because the trial court would have determined that the prosecutor was not a necessary witness, defense counsel's attempt to show otherwise would have been futile. We conclude that defense counsel was not ineffective for failing to raise a futile objection or issue by listing the prosecutor as a necessary witness or moving for her disqualification. *Ericksen*, 288 Mich App at 201.

Similarly, defendant cannot show that defense counsel was ineffective for not filing motions to compel discovery. First, defendant does not provide any information, argument, or offer of proof as to what discovery defense counsel should have obtained. Accordingly, we conclude that defendant has failed to establish the factual predicate of his claim. See *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001). Even assuming that defendant is referring to the prosecutor's notes from her interviews with the victim and Jessica, as discussed, those notes were the prosecutor's work product and thus were not subject to mandatory disclosure. Any of defense counsel's attempts to obtain the prosecutor's notes through discovery motions would have been futile. Again, defense counsel was not ineffective for failing to raise a futile objection or motion. *Ericksen*, 288 Mich App at 201.

Defendant next argues that defense counsel was ineffective for failing to object concerning the other-acts and character evidence and failing to have the trial court conduct a probative-value/unfair-prejudice analysis of the other-acts and character evidence. We disagree.

First, defendant does not describe what specific other-acts or character references defense counsel should have objected to—only that he should have "challeng[ed] the many instances of other-acts and character evidence." Accordingly, we conclude that defendant has failed to establish the factual predicate of his claim. *Carbin*, 463 Mich at 600. Even assuming that defendant meant that defense counsel should have objected to the other-acts and character evidence identified above, we conclude that defendant's argument lacks merit. Defendant neglects to admit that defense counsel did in fact object to some of the other-acts evidence, and the trial court ruled those instances admissible. Moreover, defendant has not shown that he was prejudiced by defense counsel's failure to object to some of the other-acts and character evidence. As discussed, the instances of other-acts and character evidence were either harmless error, admissible under MRE 404(b), or did not prejudice defendant. Accordingly, defendant cannot show that, but-for defense counsel's errors, a different result was reasonably probable.

Therefore, we conclude that defense counsel was not ineffective for failing to object to some of the other-acts and character evidence.

Regarding defendant's claim that defense counsel was ineffective for failing to request the trial court to do a probative value/unfair prejudice analysis, we agree that the trial court should have done such an analysis. And therefore, we conclude that defense counsel erred by not requesting it. Defendant has not, however, argued what said prejudice was, how it was unfair, or even how the trial court's analysis would have resulted. Accordingly, defendant has failed to establish the factual predicate of his claim. *Carbin*, 463 Mich at 600. Moreover, as discussed above, the evidence that would have required such an analysis would have resulted in the evidence's admissibility. Defendant has not demonstrated that but-for counsel's failure to request such an analysis a different result was reasonably probable. Accordingly, we conclude that defense counsel was not ineffective for failing to request that the trial court analyze the evidence's probative value compared to the risk of unfair prejudice.

Defendant next argues that counsel was ineffective for failing to object to the prosecutor's statements during her opening statement and closing argument. Because the prosecution's statements were proper, as explained above, any objection would have been futile. And defense counsel is not ineffective for making a futile objection. *Ericksen*, 288 Mich App at 201.

Defendant lastly argues that defense counsel was ineffective for failing to meet with and investigate the prosecution's witnesses, failing to investigate the sisters' medical records, failing to consult with or use an expert witness of his own, and failing to meet with or call defendant's requested witnesses. We disagree.

Regarding defense counsel's failure to meet with and investigate the prosecution's witnesses, we conclude that such a failure was an error on defense counsel's part. We discussed that the prosecutor was not a necessary witness because the substance of her testimony could have been elicited from the people she interviewed had defense counsel interviewed those witnesses himself. Defense counsel did not interview those witnesses, and then he was taken off guard by their testimony at trial. Had defense counsel interviewed and investigated those witnesses, he would have had an idea of their testimony going into trial, and he would have been better able to prepare for it. Therefore, we conclude that defense counsel erred by not interviewing and investigating the prosecution's witnesses.

With that said, we conclude that defendant has not shown that, but-for counsel's failure a different result was reasonably probable. Defense counsel would be ineffective for failing to investigate the witnesses if it deprived defendant of a substantial defense, *People v Grant*, 470 Mich 477, 497-498; 684 NW2d 686 (2004), or undermined confidence in the trial's outcome, *Russell*, 297 Mich App at 716. After reviewing the record, we conclude that despite being surprised by some details of the victim's and other witnesses' testimony, defense counsel was still able to cross-examine the witnesses effectively. Even though defense counsel erred by not interviewing the victim and the other witnesses, we conclude that defendant was not deprived of a substantial defense, and defense counsel's failure did not undermine confidence in the outcome of the trial. Therefore, defendant has not established that but-for counsel's error a different result was reasonably probable.

Defendant lastly claims that defense counsel was ineffective for failing to investigate the sisters' medical records, failing to consult with or utilize an expert witness of his own, and failing to meet with or call defendant's requested witnesses. Defendant has not submitted any evidence as to what information defense counsel would have gained from the sisters' medical records or how it would have helped his case. He similarly has not presented any evidence of what expert witness defense counsel should have retained, what that expert would have said, or how any supposed expert would have helped his case. Likewise, defendant has not presented any evidence of what defense witnesses defense counsel should have called, what those witnesses would have said, or how those witnesses would have helped defendant's case. Accordingly, defendant has failed to establish the factual predicate of his claim in this regard. *Carbin*, 463 Mich at 600; see also *People v Payne*, 285 Mich App 181, 190; 774 NW2d 714 (2009).

Affirmed.


/s/ Peter D. O'Connell
/s/ Joel P. Hoekstra
/s/ Brock A. Swartzle